863 So.2d 564 (2003)
STATE of Louisiana
v.
Jamar HAILEY, a/k/a Jamar Bernard.
No. 2002-KA-1738.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 2003.
Rehearing Denied February 6, 2004.
*565 Eddie J. Jordan, Jr., District Attorney, Zata W. Ard, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
STATEMENT OF THE CASE
Defendant Jamar Hailey (aka) Jamar Bernard was charged by grand jury indictment on April 15, 1999 with second degree murder, a violation of La. R.S. 14:30.1, and possession of a firearm by a person convicted of an enumerated felony, a violation of La. R.S. 14:95.1. Defendant waived his previously filed motion to suppress the identification on May 26, 2000. Defendant was tried by a twelve-person jury and found guilty as charged of second degree murder on January 20, 2001. The trial court denied defendant's motion for new trial on July 6, 2001. On July 20, 2001, the State nolle prosequied the firearm charge, and the trial court sentenced defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant filed a motion to reconsider sentence, which the trial court did not rule on. Defendant also filed a notice of appeal, which the trial court apparently granted.
The record was lodged with this court on August 27, 2002, and supplemented on March 12, 2003. Defendant filed his brief on May 21, 2003. The State filed its brief on June 9, 2003. Defendant filed a reply brief on June 16, 2003.
FACTS
Defendant was convicted of the second degree murder of Christopher Conner.
New Orleans Police Officer Akron Davis testified that on March 11, 1999, at approximately 5:30 p.m., he and his partner were driving on Louisiana Avenue when they heard gunshots. They observed a male, later identified as defendant, running. Defendant, clutching his waistband, slowed to a fast walk after observing the officers. He crossed Louisiana Avenue headed uptown on Freret Street. Officer Davis exited the vehicle, and began chasing defendant, who fled upon being told to stop. Officer Davis apprehended defendant within a couple of blocks, after seeing him discard a .357 Sig. caliber semi-automatic handgun. Officer Juan Henry's testimony *566 essentially tracked that of his partner, Officer Davis.
Detective Michael Mims investigated the homicide. Four spent cartridge casings were recovered near the victim's body. Detective Robert Hoobler assisted in the recovery of the weapon discarded by defendant. Sgt. Lynn Fletcher drove a witness, Michelle Jones, past defendant for on-the-scene identification procedure. Michelle Jones testified that she witnessed defendant chase and shoot the victim, and then stand over the fallen victim and shoot him again. Defendant ran past Ms. Jones after the shooting. She identified defendant some twenty minutes after the shooting, based upon the pants and shirt defendant was wearing, and his haircut.
Criminalist Joseph Tafarro, qualified by stipulation as an expert in the analysis of serology, fiber and gunshot residues, testified that in accordance with police department policy he did not perform tests on the victim's bloody clothing because it had been improperly packaged in plastic, resulting in the blood putrefying. Officer Ed Delery, qualified by stipulation as an expert in the development and collection of latent prints, testified that the firearm and spent cartridge casings were negative for latent fingerprints, except a partial one on the slide of the gun that was not suitable for identification.
Dr. Paul McGary, qualified by stipulation as expert in the field of forensic pathology, autopsied the victim, who had seven gunshot wounds that could have been made by five bullets. Two of the wounds were fatal.
New Orleans Police Department Crime Scene Technician Tamatra Green collected and packaged as evidence four spent cartridge casings and the murder weapon. Officer Byron Winbush was qualified by stipulation as an expert in the testing and examination of firearms, and in ballistics. He testified that three of the bullets recovered during the autopsy of the victim had been fired by the handgun recovered after the homicidethe one defendant discarded while being chased by Officer Davis. Also, all four of the spent cartridge casings found at the scene of the homicide were fired from the gun.
Lydia Conner, the victim's aunt, testified that the last time she saw her nephew was the day before he was killed.
Officer Luther Randall testified on behalf of the defendant that he did not participate in the homicide investigation, and did not collect the murder weapon, although his name was listed on the crime lab examination request form as the person who did.
ERRORS PATENT
A review of the record reveals two errors patent. First, the record does not reflect that defendant was arraigned. However, La. C.Cr.P. art. 555 states that an error in failing to arraign a defendant is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty. Defendant went to trial without objecting that he had not been arraigned. Accordingly, this error is harmless.
The second patent error is that the record does not reflect that the trial court ruled on defendant's motion to reconsider his sentence. When defense counsel filed the motion to reconsider immediately after sentenced was pronounced, the trial court stated that it would let the motion be filed in the record "without a decision on it." While the failure to rule on a motion to reconsider sentence would preclude review of a defendant's sentence, defendant in the instant case does not seek review of his sentence. The failure to rule on the motion to reconsider sentence does not preclude review of a defendant's conviction.
*567 State v. Foster, XXXX-XXXX, p. 3 (La.App. 4 Cir. 9/11/02), 828 So.2d 72, 74 (expressly declining to follow State v. Roberts, XXXX-XXXX (La.App. 4 Cir. 1/23/02), 807 So.2d 1072, where this court stated that without a final sentence a conviction is not appealable); see also State v. Davis, XXXX-XXXX (La.App. 4 Cir. 2/14/01), 781 So.2d 633 (conviction affirmed, remanded for ruling on motion to reconsider); State v. Allen, 99-2579 (La.App. 4 Cir. 1/24/01), 781 So.2d 88 (conviction affirmed, remanded for ruling on motion to reconsider).
ASSIGNMENT OF ERROR
In his sole assignment of error, defendant asserts that the trial court erred in denying him the right to peremptorily backstrike jurors during jury selection.
Backstriking is a party's exercise of a peremptory challenge to strike a prospective juror after initially accepting him. State v. Plaisance, XXXX-XXXX, p. 30, n. 4 (La.App. 4 Cir. 3/6/02), 811 So.2d 1172, 1193, n. 4, writ denied, XXXX-XXXX (La.11/27/01), 831 So.2d 270, cert. denied, Plaisance v. Louisiana, ___ U.S. ____, 123 S.Ct. 2084, 155 L.Ed.2d 1071 (2003). An accused has a constitutionally guaranteed right to peremptorily challenge jurors. La. Const. Art. I, § 17. La.C.Cr.P. art. 795(B)(1) states only that peremptory challenges shall be exercised prior to the swearing of the jury panel. La.C.Cr.P. art. 788(A) states that when a prospective juror is accepted by the State and the defendant, he shall be sworn immediately as a juror, subject to the provisions of La.C.Cr.P. art. 795. Thus, in State v. Watts, 579 So.2d 931 (La.1991), the Louisiana Supreme Court cited La.C.Cr.P. art. 795(B)(1) in holding that even though a prospective juror is "temporarily" accepted and immediately sworn as juror in accordance with La.C.Cr.P. art. 788, that juror may nevertheless be challenged peremptorily prior to the swearing of the entire jury panel.
In State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, the Louisiana Supreme Court agreed with the defendant that Watts was violated when the trial court denied the defendant the right to use backstrikes, i.e., exercise his remaining peremptory challenges immediately before the jury panel was sworn, but found the error harmless. In Plaisance, supra, this court held that La.C.Cr.P. art. 795(B)(1), as interpreted in Watts, provided for backstrikes. This court further held that the trial court in Plaisance had erred in denying the defendant the right to use backstrikes, but found that the error harmless, citing Taylor, supra. Thus, a defendant has a right under La.C.Cr.P. art. 795(B)(1) to employ backstrikes, but the erroneous denial of that right is subject to the harmless error analysis.
In the instant case, immediately after the first eight jurors were accepted from the first panel by the State and defendant, defense counsel asked the trial court if it allowed backstriking. The trial court replied in the negative, and defense counsel noted an objection for the record on that issue. During his exercise of challenges for the second panel, defense counsel again noted an objection to the trial court's ruling that no backstrikes were allowed. Defendant did not raise the issue of backstrikes again. Only one additional juror, the ninth, was selected from the second panel of prospective jurors. The third and final panel of prospective jurors yielded the last three jurors and an alternate. Defendant was left with three peremptory challenges at the conclusion of jury selection.
At a hearing on defendant's motion for new trial based on the backstrike issue, defense counsel argued that he had wished to backstrike three jurors. The first was *568 Brooklyn Foster, who defense counsel represented was the daughter of a murder victim whose killer was tried in the same section of court as the instant case. Defendant mentioned a second juror, "Lloyd" Taylor. The only "Taylor" who served on the jury was Lovell Taylor, a female. Defense counsel did not say anything about why he would have backstruck this juror. The third juror defense counsel referred to at the motion for new trial was Jessie Small, who at one point during voir dire stated that he believed defendant must be guilty of something because he was indicted by the grand jury. All three of these jurors had been in the first of the three panels voir dired. In his brief on appeal, defendant states that there is an indication defense counsel would have backstruck juror Calvin Carcise, because both he and Mr. Small had given the same responses as another juror, Mr. Woolridge, about defendant being guilty. However, defense counsel did not mention Mr. Carcise at the motion for new trial.
In Taylor, supra, the State, the defense and the trial court initially agreed that backstrikes were permissible, but also that challenges were to be made simultaneously. During the exercise of challenges on the first panel of prospective jurors, the State complained that the defendant was saving all of his peremptory challenges to use in backstrikes. The trial court at that point ruled that no backstrikes would be allowed. When jury selection concluded, the defendant had four peremptory challenges remaining, which he said he wished to use. The trial court denied the request. The defendant argued on appeal that he was prejudiced because he would have chosen to backstrike a juror who was selected from the last panel of twelve that was voire dired. The defendant had used one peremptory challenge on that last panel, and still had four left for use when selecting the alternate. The Louisiana Supreme Court noted that it had been the final full panel, with only an alternate to be selected afterward, and stated that the defendant could have exercised one of his remaining four peremptory challenges to strike the prospective juror at the same time he struck the other one. The court said that, under those circumstances, the defendant suffered no prejudice.
In Plaisance, supra, defendant's trial counsel averred in an affidavit attached to the defendant's brief that there were several members of the first panel of jurors initially selected whom he would have challenged had backstrikes been allowed. However, he failed to specify any particular juror he would have backstruck. Further, as in the instant case, defense counsel had not noted at trial any particular juror he would have backstruck. This court noted these factors, further noted that the voir dire record did not reflect any unsuitable jurors from the first panel, and concluded that the defendant had not been prejudiced by the error in denying defendant his statutory right to use backstrikes.
In State v. Crotwell, 2000-2551 (La.App. 1 Cir. 11/9/01), 818 So.2d 34, as in the instant case, defense counsel inquired during challenges of the first panel of prospective jurors whether he could backstrike, and the trial court replied in the negative. Defendant did not object at that time, but did so after all the challenges had been made on the second panel and all jurors except the alternate had been accepted. However, just as in the instant case, at no time did defense counsel request to backstrike any particular juror. On appeal, the court found that the trial court had erred in denying the defendant the right to backstrike. The court found that the error was harmless, citing defense counsel's failure to challenge any particular juror with a backstrike, and counsel's failure at the *569 time of the ruling to object and argue a basis why backstrikes should have been permitted. In addition, the defendant did not allege on appeal any prejudice that might have occurred to him.
In the instant case, just as in Crotwell, supra, defense counsel did not, at any point during the jury selection process or at the conclusion thereof, note any jurors in particular that he would have backstruck. There is no jurisprudence to the effect that defense counsel is required to do so in order to preserve his backstrike claim for review. However, the effect of not requiring a defendant to specify at trial who he would have backstruck is to permit a defendant to gamble upon receiving a favorable jury verdict, and then, upon the return of an unfavorable verdict, scour the voir dire transcript for jurors whom he can claim he would have backstruck. As previously noted, at the hearing on defendant's motion for new trial, defense counsel only gave reasons for why he would have backstruck two jurors, Ms. Foster and Mr. Small. Defendant makes no argument on appeal as to Lovell Taylor, the third juror to whom defendant referred. While Ms. Taylor said she had served on one jury in which the defendant was found guilty of armed robbery, a number of other prospective jurors eventually accepted also had served on prior juries that had found defendants guilty. Defendant has failed to show any prejudice as a result of being denied a right to backstrike Ms. Taylor.
Defendant was tried for second degree murder. Only ten of the twelve jurors needed to vote to convict in order to return a guilty verdict. The jury verdict in the instant case was unanimous. Even assuming Ms. Foster and Mr. Small had been replaced with jurors who would have ignored the compelling evidence against defendant and voted not guilty, the other ten guilty votes would have been sufficient to convict him. Moreover, given the overwhelming evidence against defendant, any rational juror would have found him guilty as charged.
While a defendant has a constitutional right under the Louisiana State Constitution to peremptorily strike prospective jurors, there is no constitutional right to backstrike, only a statutory right. Considering the facts and circumstances of the instant case, defendant has failed to show that he was prejudiced by the trial court's denial of his statutory right to backstrike or that because he could not backstrike he was thereby denied his constitutional right to peremptorily strike prospective jurors. The error was harmless. That is, the verdict actually rendered in this case was surely unattributable to the error. State v. Snyder, 98-1078, p. 15 (La.4/14/99), 750 So.2d 832, 845. There is no merit to this assignment of error.
CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence is affirmed.
AFFIRMED.