NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-566

STATE OF LOUISIANA

VERSUS

LOUIS JOSEPH GEORGE

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 114778
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

AFFIRMED WITH INSTRUCTIONS.

Keith A. Stutes
Assistant District Attorney
P. O. Box 3306
Lafayette, LA 70502
(337) 232-5170
COUNSEL FOR APPELLEE:
    State of Louisiana

**Beth S. Fontenot**
**Louisiana Appellate Project**
**P. O. Box 3183**
**Lake Charles, LA 70602-3183**
**(337) 491-3864**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Louis Joseph George**

**IN PROPER PERSON:**
**Louis Joseph George**
**Louisiana State Penitentiary**
**Camp D Falcon 1**
**Angola, LA 70712**

**DECUIR, Judge.**

In April 1989, Michelle Steven was severely choked and beaten in her home. She never regained consciousness and died as a result of the assault in 2001. The perpetrator of the crime was not immediately known. In 2003, Thad Badeaux, a detective with the Lafayette Parish Sheriff's Office, reopened the dormant case when he discovered through an updated process that the fingerprints taken from the victim's bathroom windowsill matched the fingerprints of Defendant, Louis Joseph George.

On March 14, 2007, following a DNA analysis of preserved evidence and additional investigation, Defendant was indicted for the 1989 first degree murder of Michelle Steven. The charge was later amended to second degree murder, a violation of La.R.S. 14:30.1. Jury trial commenced on September 12, 2011, at which time Defendant made an oral motion to continue, which was denied. Defendant filed an expedited writ with this court seeking review of the trial court's ruling. This court found no error in the denial of a continuance and denied Defendant's writ application. *State v. George,* an unpublished writ bearing docket number 11-1134 (La.App. 3 Cir. 9/13/11).

On September 16, 2011, the jury found Defendant guilty as charged, and he was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant now appeals, alleging error in the denial of a continuance, which caused his DNA expert to miss the trial, and error in the impaneling of the jury. For the following reasons, we affirm the conviction and sentence.

## ASSIGNMENT OF ERROR NUMBER 1:

Defendant first argues the trial court erred when it denied his motion for new trial. The motion alleged that had the trial court granted a continuance of the trial,

his DNA expert could have testified. Defendant moved for a continuance on the day trial commenced because his DNA expert could not attend and produce testimony contradicting the DNA expert testimony introduced by the State. Had his expert witness been able to testify, Defendant argues, the verdict would have been different and therefore justice requires a new trial. Defendant cites Louisiana Code of Criminal Procedure Article 851 as grounds for a new trial, which provides at Paragraph (5) that a new trial shall be granted when: "The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."

A trial court has almost unlimited discretion to grant or deny a motion for new trial to serve the ends of justice, and its decision should not be interfered with unless there has been a palpable abuse of that discretion. *State v. Guillory*, 10-1231 (La. 10/8/10), 45 So.3d 612.

The record reveals the following facts regarding the DNA testimony adduced at trial. In April 1989, when the beating of the victim occurred, Howard Joseph Verret, Jr. was a forensic chemist with Acadiana Crime Laboratory and was trained primarily in the field of serology. He testified that he had received clothing from the victim and found on the victim's trousers a spot of blood the approximate size of a quarter. However, in 1989, Acadiana Crime Laboratory did not perform DNA testing. He testified that various blood spots on the victim's clothing, including the spot on the trousers, were cut out and frozen for later testing.

George Schiro, a technical leader with Acadiana Crime Laboratory, testified that he was asked to perform DNA analysis of the various samples in 2003. On the one spot of blood found on the victim's trousers, DNA profiles of two contributors were detected. The major contributor was the victim, but the DNA profile of the

2

minor contributor was only a partial profile. Schiro testified that Defendant could not be excluded as the minor contributor. He further explained that there was a one in eleven million chance that the same partial DNA profile would have matched an individual in a randomly selected population of unrelated people, as it had matched Defendant's DNA profile. Schiro opined his conclusions were consistent with a hypothesis of an attack which resulted in the combination of the victim's excessive bleeding and Defendant's slight bleeding from an injury to his fist.

On the day trial commenced, September 12, 2011, Defendant asked for a continuance of the trial. He asserted that his DNA expert witness had become unavailable due to a death in the family, a previous commitment to prepare for another trial, and dental surgery. Defendant's motion was denied, and the trial proceeded. As noted above, the matter of whether the trial court erred when it denied the motion to continue was resolved by this court via a pre-trial writ application.

Sentencing was originally scheduled for September 29, 2011. However, it was rescheduled for October 20, 2011, to allow time for Defendant's DNA expert to receive a copy of Schiro's testimony and to review the discovery material sent to him prior to trial. On the day of the sentencing hearing, Defendant filed his motion for new trial and offered a letter from his DNA expert, which referenced Schiro's testimony, and concluded:

> In my opinion these statements do not fully explain the data obtained. Since a mixture of DNA profiles was obtained from the stain on the pants one cannot definitively state that Louis George was one of the persons who contributed his DNA to the profiles. There may be persons in the population who possess alleles that are different from Louis George but when mixed would give the mixture of DNA profiles detected. There are alleles that Louis George possesses which are not in the mixture of DNA profiles. If one leaves biological material(s) on an item they leave all of their alleles. There are many possibilities why a complete DNA profile that is consistent with Louis

George was not observed. One possibility is that Louis George did not contribute his DNA to the mixture. There is the possibility that if a complete DNA profile had been obtained that Louis George would have been excluded as contributed to the mixture of DNA profiles observed.

The trial court pointed out that it did not deny Defendant the right to have his expert testify but that, according to the expert, he should have been available sometime later during the week of trial. According to comments made by the trial judge, the court expected the expert to appear at trial. Furthermore, the transcript shows a thorough cross examination of the State's witnesses and proof that Defendant was excluded as the DNA contributor of all other samples tested from the crime scene, including semen samples. As the State explains, Schiro's testimony established only that Defendant could not be excluded as the minor contributor to the blood stain on the victim's trousers, nothing more. The motion for new trial was denied.

Besides the one piece of DNA evidence linking Defendant to the crime, the record provides other evidence of Defendant's guilt. There was physical evidence that Defendant's fingerprints were located on the victim's bathroom windowsill— through which it was speculated that the assailant had gained access to the victim's house. There was testimony given at trial that after the victim was hospitalized, Defendant made threatening gestures towards the victim's sister, whom he was living with at the time. The victim's brother testified that prior to the assault, he had witnessed an altercation between Defendant and the victim, where the victim slapped him and threatened to tell her sister what he tried to do with her. The victim's sister testified that the night before the incident when Defendant left the house, his hand was not injured, but in the morning, when he returned, it was injured; she also stated that she never found his clothes from that night. Another witness testified that after the assault on the victim, she had a disagreement with

4

Defendant who told her that if she kept "messing" with him, she would end up like the victim. Finally, a witness who was incarcerated at the time Defendant was first taken into custody testified that Defendant told him that he had visited a woman with the intention of having sex with her but he had to restrain her and put a choke hold on her.

Considering the evidence presented at trial and the post-trial statement of Defendant's DNA expert, we find no error in the denial of Defendant's motion for new trial. The two experts said essentially the same thing—the DNA was not definitive evidence of Defendant's guilt or innocence in this case. Accordingly, we find Defendant has failed to show palpable abuse of the trial court's discretion such that the ends of justice would be served by the granting of a new trial.

## ASSIGNMENT OF ERROR NUMBER 2:

In his next assignment of error, Defendant argues the trial court violated his constitutional right to conduct *voir dire* of a prospective juror. During the *voir dire* process, as the judge was questioning the potential jurors, Eva Hebert asked to speak with the judge privately, and after a discussion, the judge excused her. The next day, prior to the presentation of evidence, defense counsel objected to the juror's exclusion before he had a chance to question her. Defense counsel moved for a mistrial, which the trial court denied with the following explanation:

> For the record, that juror raised her hand and asked to approach the bench. She was the aunt [of] Mr. Floyd Johnson who was recently convicted, who was an assistant district attorney in this parish for a number of years, and she felt uncomfortable being asked to serve on this jury, and that's the reason that this Court excused her. In fact, she did not even want to relate that in open court. In fact, that's why I asked her to approach the bench. And I asked the lawyers on both sides of the aisle to approach the bench and I relayed that message to you.

Defendant cites La.Code Crim.P. art. 797 and states that Ms. Hebert should have been excused from the jury only after a valid challenge for cause by either Defendant or the State. Article 797 provides:

> The state or the defendant may challenge a juror for cause on the ground that:
>
> (1) The juror lacks a qualification required by law;
>
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
>
> (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
>
> (4) The juror will not accept the law as given to him by the court; or
>
> (5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.

The State argues contrarily that La.Code Crim.P. art. 783 allows a trial court to excuse a potential juror at any time prior to being sworn in as a juror. Article 783(A) provides:

> The court may excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case. The panel shall be selected from the remaining members of the petit jury venire. The court, either on its own motion, or that of the state or a defendant, may order the attachment of an absent and unexcused petit jury venireman.

The supreme court reconciled these two articles in *State v. Gomez*, 319 So.2d 424, 425 (La.1975) (emphasis in original), as follows:

> The apparent conflict between these two Code articles has been resolved by the jurisprudence by allowing the trial judge, within his sound discretion, to release prospective jurors *in advance of voir dire examination*; the trial judge's decision in this matter is not to be disturbed unless there is a showing of fraud or collusion resulting in

6

prejudice to the accused. *State v. Witherspoon,* 292 So.2d 499 (La.1974); *State v. Jack,* 285 So.2d 204 (La.1973); *State v. Williams*, 258 La. 801, 248 So.2d 295 (La.1971).

The interpretation given by the cases is supported by revisors' comment (b) to La.C.Cr.P. art. 783. The comment, quoted below, indicates that the trial judge is to be vested with discretion to dismiss members of the petit jury venire before they are called for examination in a particular case:

*Official Revision Comment*

\* \* \*

(b) This article, as well as the source articles, contains a near contradiction. That is, there is some conflict between the defendant's right to have at hand the entire venire, and the court's authority to excuse a large part of the venire in advance. However, the right of the judge to excuse in advance is essential, since many persons chosen for the venire have valid reasons for being excused. The discretion of the judge must be relied upon to avoid abuse, and abuse is reversible error.

In the present case, Defendant has failed to show how the trial court's exclusion of the potential juror was fraudulent or caused him irreparable injury. While Defendant alluded to the race of the prospective juror as black, as was he, there was no evidence offered that Ms. Hebert's exclusion caused him prejudice for that reason or any other reason. There is no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER 3:**

Defendant next argues that the trial court erred when it refused to remove Kenneth Richard from the empaneled jury when it was revealed that Richard was employed for several years by the same company as one of the witnesses. The witness was David Gabriel, the boyfriend of the victim and the person who found her in her home after she was beaten. Defendant argues that had he known of this relationship prior to accepting the juror, he would have challenged him for cause based on La.Code Crim.P. art. 797(3), which provides that a juror may be challenged for cause if:

The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]

Article 797(3) does not apply to a relationship between the juror and a witness. Nor does any law require jurors to be completely unacquainted with persons involved in a criminal trial. *State v. Juniors*, 03-2425 (La. 6/29/05), 915 So.2d 291, *cert. denied*, 547 U.S. 1115, 126 S.Ct. 1940 (2006). In *State v. Stewart,* 08-1265 (La.App. 5 Cir. 5/26/09), 15 So.3d 276, *writ denied*, 09-1407 (La. 3/5/10), 28 So.3d 1003, the fifth circuit found no abuse of discretion in the denial of a defendant's challenge for cause when a juror realized, after testimony began, that he lived two doors down from the defendant's accomplice. The fifth circuit explained:

> The law does not require that a jury be composed of individuals who are totally unacquainted with the defendant, the prosecuting witness, the prosecuting attorney, and the witnesses who may testify at trial. Rather, the law requires that jurors be fair and unbiased. *State v. Williams*, 00-1134 (La.App. 5 Cir. 3/28/01), 783 So.2d 566, 567, *citing*, *State v. Shelton*, 377 So.2d 96, 102 (La.1979).

> A juror's disclosure during trial that the juror knows or is related to a witness or the victim is not sufficient to disqualify that juror, unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict. *State v. Holland,* 544 So.2d 461, 465 (La.App. 2 Cir.1989), *writ denied*, 567 So.2d 93 (La.1990). The connection must be such that one must reasonably conclude that it would influence the juror in arriving at a verdict. *State v. Holland,* 544 So.2d at 465, *citing*, *State v. Hodgeson,* 305 So.2d 421 (La.1974).

*Id.* at 288.

In the present case, the juror did not know the witness's actual name but only a nickname. He stated he did not socialize with the witness and often would not see the witness for months at a time. He indicated he could be fair and impartial in making his decision regarding Defendant's guilt or innocence. There was nothing to indicate to the trial court that the limited employment relationship

8

with the witness would influence the juror in arriving at a verdict. Accordingly, we find no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER 4:**

Defendant argues in his last assignment of error that when the trial court denied him the right to exercise backstrikes of the entire jury panel, it caused prejudicial error in the jury selection process. By allowing backstrikes only within panels of prospective jurors, Defendant contends the trial court caused confusion in the selection process, which served to "rattle" Defendant's attorney. Consequently, during the course of jury selection, Defendant approached the bench and advised the court that he had made a mistake and challenged a potential juror that he had meant to accept, Nathaniel Miller. He moved to rescind his peremptory challenge and asked that Miller be placed back on the panel. The trial court denied Defendant's motion, and Defendant put his objection on the record. Later, Defendant moved for a mistrial based on the trial court not permitting him to backstrike the entire jury panel. Defendant's motion was denied.

Defendant argues now "that in the wake of the confusion regarding the backstrike issue," he accidently rejected a potential juror whom he wanted on the jury. He argues that the juror was critical in that during *voir dire*, the potential juror had "stated that he did not believe DNA testing was as 'infalliable as we would hope it to be.'"

In *State v. Seals*, 09-1089, pp. 28-32 (La.App. 5 Cir. 12/29/11), 83 So.3d 285, 315-17 (footnotes omitted), the defendant alleged prejudice when the trial court refused him the right to backstrike, and the fifth circuit stated:

> An accused has a constitutionally guaranteed right to peremptorily challenge jurors. When, however, the jury panel is not sworn until all individual jurors and alternates have been selected, peremptory challenges may be exercised even after tendering of jurors under LSA-C.Cr.P. art. 788(A). In other words, in Louisiana,

9

peremptory challenges are exercisable at any time before the entire jury panel is sworn.

Backstriking is the term for a party's exercise of a peremptory challenge to strike a prospective juror after initially accepting him. While a defendant has a constitutional right under the Louisiana State Constitution to peremptorily strike prospective jurors, there is no constitutional right to backstrike, only a statutory right.

Backstriking of jurors is authorized by LSA-C.Cr.P. art. 799.1, which provides:

Notwithstanding any other provision of law to the contrary, and specifically notwithstanding the provisions of Article 788, in the jury selection process, the state and the defendant may exercise all peremptory challenges available to each side, respectively, prior to the full complement of jurors being seated and before being sworn in by the court, and the state or the defendant may exercise any remaining peremptory challenge to one or more of the jurors previously accepted. No juror shall be sworn in until both parties agree on the jury composition or have exercised all challenges available to them, unless otherwise agreed to by the parties.

Courts have routinely held that the failure to allow a party to backstrike is error, but such error is subject to a harmless error test.

The court then performed a harmless error review, citing *State v. Taylor*, 93-2201 (La. 2/28/96), 669 So.2d 364, *cert. denied*, 519 U.S. 860, 117 S.Ct. 152 (1996); *State v. Plaisance,* 00-1858, (La.App. 4 Cir. 3/6/02), 811 So.2d 1172, *writ denied*, 02-1395 (La. 11/27/02), 831 So.2d 270, *cert. denied*, 538 U.S. 1038, 1235 S.Ct. 2084 (2003); and *State v. Hailey,* 02-1738 (La.App. 4 Cir. 9/17/03), 863 So.2d 564, *writ denied,* 04-612 (La. 2/18/05), 896 So.2d 20. The court concluded: "[G]iven the overwhelming evidence against defendant, any rational juror would have found him guilty as charged. *Hailey, supra*. Accordingly, we find that the trial judge's error in failing to allow backstrikes was harmless." *Seals,* p.32, 83 So.2d at 317.

In the present case, the trial court erred when it did not allow Defendant to backstrike accepted jurors from the first panel once they were accepted. However,

the error in this case was harmless. We have previously discussed the credible scientific evidence of Defendant's guilt, as well as the numerous fact witnesses who described Defendant's behavior after the crime had been committed. Additionally, the record reveals that Defendant had ample opportunity to question the prospective jurors on the first panel. After twelve prospective jurors were picked from the first panel and before they were sworn, the trial court asked if there were any backstrikes, and after consultation with Defendant, defense counsel back struck one juror. Defendant does not indicate any other specific juror whom he would have back struck later. Regarding the issue of Miller, upon review, we find he was not critical to the guilty verdict. Defendant was charged with second degree murder, an offense which required ten of twelve votes for conviction. The jury was unanimous in this case; therefore, had Miller been on the panel and voted not guilty, the other eleven guilty votes would have been sufficient to convict him.

The trial court's error in failing to allow backstrikes was harmless in this case. Defendant also fails to demonstrate that the trial court's erroneous denial contributed to the jury's verdict against him. *See State v. Lewis*, 10-1775, 2012 WL 1134931 (La.App. 4 Cir. 4/4/12), ___ So.3d ___. There is no merit to this assignment of error.

**PATENT ERROR**

Finally, in reviewing the record for patent error, we notice the record does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. The trial court must be directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the

11

notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## DECREE

For the above and foregoing reasons, the conviction and sentence are affirmed.

**AFFIRMED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.