MADELEINE M. LANDRIEU, Judge.
_JjThe defendant, Vincent Jordan, appeals his conviction of possession of cocaine and his sentence of four years imprisonment at hard labor. For the reasons that follow, we affirm.

STATEMENT OF CASE

On February 14, 2012, the State filed a bill of information charging Mr. Jordan with one count of possession of cocaine, a violation of La. R.S. 40:967(0(2). He pled not guilty. The trial court denied his motions to suppress and found probable cause to substantiate the charge.[1] At the conclusion of trial on June 25, 2012, the jury found Mr. Jordan guilty as charged.
On July 27, 2012, the trial court denied Mr. Jordan’s motion for new trial, sentenced him to four years at hard labor with credit for time served, and granted his motion for appeal. This timely appeal followed.

UFACTS

A confidential informant advised the police that Mr. Jordan was selling drugs and delivering them in a white car. On December 22, 2011, Mr. Jordan was the seller in a controlled buy set up by the Major Narcotics Unit of the New Orleans Police Department (“NOPD”). After the buy, Det. Derrick Burke and other officers conducted surveillance of Mr. Jordan. The detective observed Mr. Jordan driving a white Lincoln town car and being followed by someone in a tan Mercedes-Benz. Mr. Jordan drove to 1753 N. Dupre Street and parked in the driveway. He exited his vehicle carrying a Kool cigarette package in his right hand and entered the rear of the house, which appeared abandoned.
After remaining in the house a few moments, Mr. Jordan came out and was no longer carrying the Kool cigarette package. He then got behind the wheel of the Mercedes-Benz and drove away with a female passenger.
Detectives Burke and Ricky Jackson went inside and searched the house. With the assistance of a police canine, Det. Jackson found a Kool cigarette package that contained powdered cocaine in a plastic bag hidden in a roll of roofing material.[2] Det. Jackson photographed the interior and exterior of the house, and he noted that one of the photos depicted a 2009 New Orleans Department of Safety and Permits placard mounted on an interior window pane. He stated that the house was abandoned. Leaves and debris littered the floor of the house and an unhinged door was propped against the building. Clear plastic bags were also recovered from the house. After the cocaine was discovered, Det. Jackson radioed other officers to alert them.
| oSgt. Jeff Sislo testified that he had set up the surveillance of Mr. Jordan based upon the information received from the confidential informant. After Mr. Jordan exited the house on N. Dupre Street, Sgt. Sislo followed him to an apartment complex in New Orleans East. Mr. Jordan parked inside the apartment complex gate and engaged in a brief conversation with another male. Meanwhile, Det. Jackson notified Sgt. Sislo of the cocaine discovery. When Mr. Jordan left the apartment complex, Sgt. Sislo stopped him, advised him of his rights and placed him under arrest for possession of cocaine. A search of Mr. *392 Jordan’s pants pocket produced $324.00. Thereafter, Sgt. Sislo relocated Mr. Jordan to 1753 N. Dupre Street for processing by Detectives Burke and Jackson.
Det. Jackson also Mirandized Mr. Jordan. After executing a waiver of rights form, which was introduced into evidence, Mr. Jordan admitted to the detective that the cocaine found in the abandoned house belonged to him.
Mr. Leroy Smith testified that he was the owner of 1753 N. Dupre Street, and that he had known Mr. Jordan for a number of years. Mr. Smith testified that he had given Mr. Jordan permission to work on his car at the property. On the night of Mr. Jordan’s arrest, Mr. Smith saw the police walking on his property but did not speak to them.

ERRORS PATENT

A review for errors patent on the face of the record reveals one. The record indicates that the trial judge sentenced Mr. Jordan immediately after denying his motions for post-verdict judgment of acquittal and new trial. La.C.Cr.P. art. 873 states that if a motion for new trial or motion in arrest of judgment is filed, sentence shall not be imposed until at least twenty-four hours after the motion is denied, unless the defendant waives the delay or pleads guilty. A defendant may | ¿implicitly waive the twenty-four hour delay by announcing his readiness for sentencing. State v. Foster, 2002-0910, p. 2 (La.App. 4 Cir. 12/11/02), 834 So.2d 1188, 1191.
In this case, after denying the motions but before imposing sentence, the trial judge asked defense counsel if there was anything further prior to sentencing. Defense counsel responded negatively, indicating that his client was ready for sentencing. Thus, defense counsel waived the delay. See State v. Harrison, 2008-1110, p. 10 (La.App. 4 Cir. 6/25/09), 16 So.3d 447, 455. Accordingly, this error is harmless.

DENIAL OF MOTION TO SUPPRESS

Mr. Jordan assigns error to the trial court’s denial of his motion to suppress the evidence. He argues the evidence was tainted by the warrantless search conducted at 1753 N. Dupre Street, and that the State failed to produce evidence to support its contention that he had no right to be in the N. Dupre Street house.
The Fourth Amendment protects persons against unreasonable searches and seizures. See Vemonia School Dist. 47J v. Acton, 515 U.S. 646, 652, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564 (1995) (“As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is reasonableness’.”). For the police to violate a defendant’s Fourth Amendment rights, the defendant must have had a “reasonable expectation of privacy,” which involves both a person’s subjective expectation of privacy and an expectation that society is prepared to recognize as “reasonable.” See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Thus, the pertinent inquiry is: “the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which |flhe seeks to challenge.” Raleas v. Illinois, 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). To obtain the remedial benefits of a Fourth Amendment violation through the suppression or exclusion of evidence, the defendant must establish not only that the search was illegal, but also that he had “a legitimate expectation of privacy” in the premises searched. See Rawlings v. Kentucky, 448 U.S. 98, 104-105, 100 S.Ct. 2556, 2561, 65 *393 L.Ed.2d 633 (1980) (citing Raleas, 439 U.S. at 131, n. 1, 99 S.Ct. at 423, n. 1).
When a district court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of discretion, i.e., unless such ruling is not supported by the evidence. See State v. Green, 94-0887, p. 11 (La.5/22/95), 655 So.2d 272, 280-81.
Initially, because Mr. Jordan did not own the N. Dupre Street property, there is a question as to whether he has standing under either state or federal law to contest the admissibility of the evidence seized by the NOPD. The State denies that Mr. Jordan has standing because he neither owned nor had permission to enter the house, and he therefore had no objectively reasonable expectation of privacy in the contraband hidden in the house. Mr. Jordan, on the other hand, denies that the property was abandoned, maintaining instead that it was undergoing renovation. Further, he maintains that the owner gave him permission to enter the house, and consequently, that he had an expectation of privacy in the premises searched.
The facts established in the suppression hearing do not support Mr. Jordan’s argument. Mr. Jordan did not offer any evidence to prove that he resided in the house in which the drugs were seized or that he had the owner’s permission to enter the house. In fact, in his writ application seeking reversal of the denial of his motion to suppress the evidence, the defendant conceded “that he presented no | fievidence at the motions hearing to directly support [his] position.”[3] Moreover, the transcript of the trial testimony of Mr. Leroy Smith, the property owner, does not support Mr. Jordan’s contention that he had a reasonable expectation of privacy in the dwelling:
Q .... did you give [the defendant] any permissions regarding the use of your property on Dupre Street?
A. Yes. He and others in the neighborhood — the fellow that does — he’s a mechanic and he works on my vehicle, as well as a few other tenants in the neighborhood, like specifically the one right behind me, so it’s convenient for him to work in my yard.
[[Image here]]
Q. Did you give [the defendant] permission to store cocaine in your house on North Dupre?
A. No.
Q. Did you know that he was keeping cocaine in your house on North Dupre? A. Of course not.
Q.... The Kool pack of cigarettes that was located in your house that is behind the one you actually live in, was that cocaine yours?
A. No, ma’am.
As the record demonstrates, Mr. Jordan failed to establish that he had an expectation of privacy in the premises searched. There is no evidence that Mr. Jordan either lived there or that Mr. Smith gave him permission to enter the house. Mr. Smith’s testimony establishes that he gave Mr. Jordan permission to work on his car on the property, not to enter the house. Moreover, a defendant’s expectation of privacy, namely, that he is entitled to place illegal contraband onto the property |7of another without government intrusion, is not recognized by society as reasonable. See State v. Robertson, 557 So.2d 315 (La.App. 4th Cir.1990) (no expectation of privacy inside an abandoned house).
Accordingly, the trial court did not abuse its discretion by denying the motion *394 to suppress. The defendant did not show that he had permission to be inside the house nor that he had an expectation of privacy in storing contraband in the house.
This assignment of error has no merit.

ADMISSIBILITY OF EVIDENCE

Mr. Jordan contends that the trial court erred by refusing to allow him to introduce evidence that would have discredited Detectives Burke’s and Jackson’s testimony that Mr. Jordan had confessed to owning the cocaine recovered from the abandoned house. The evidence Mr. Jordan sought to have admitted was the anticipated testimony of Mr. Leroy Smith that he had heard Mr. Jordan deny ownership of the cocaine and demand that the police test the cigarette pack for fingerprints.[4] The State objected to Mr. Smith’s anticipated testimony on the basis of hearsay, and the trial court sustained the objection.
Generally, any out-of-court statement of the accused constitutes hearsay unless subject to an exception. Such a statement may be admissible as an exception to the hearsay rule if it qualifies as an admission against interest. However, a defendant’s own self-serving, exculpatory statements are inadmissible hearsay. State v. Taylor, 31,227, p. 7 (La.App. 2 Cir. 10/28/98), 720 So.2d 447, 451; State v. Freeman, 521 So.2d 788, 786 (La.App. 2d Cir.1988).
|sIn the trial court, the defense argued that Mr. Smith’s testimony was not hearsay because it was not being offered to prove the truth of the matter asserted. Defense counsel further argued that the testimony was admissible impeachment evidence against Det. Burke’s and Det. Jackson’s testimony that Mr. Jordan had admitted the cocaine belonged to him.[5] The trial court decided that Mr. Smith’s anticipated testimony was an inadmissible self-serving exculpatory statement and prohibited its introduction into evidence at trial.
Mr. Jordan clearly intended to use the out-of-court statement for its exculpatory value. Therefore, the statement was offered to prove the truth of the matter asserted and clearly is hearsay. See La. C.E. arts. 801A(1) and 801C.
Mr. Jordan alternatively argues that his Sixth Amendment right to present a defense supersedes Louisiana’s hearsay rules. He cites Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), in support of this position.
We reject this argument. Chambers is not applicable to the instant situation.[6] Chambers involved a particular set of factual circumstances based upon which the U.S. Supreme Court found that the combined effect of the Mississippi’s voucher rule and hearsay rule denied the defendant a trial “in accord with traditional and fun *395 damental standards of due process.” Id., 410 U.S. at 302, 93 S.Ct. at 1049. The Court noted that “where constitutional rights directly affecting |sthe ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.” Id. However, the Chambers Court expressly limited its holding to the facts and circumstances presented in that case. Id., 410 U.S. at 303, 93 S.Ct. at 1050.
The facts in the present case are completely distinguishable from those in Chambers. A hearsay statement is neither critical nor even necessary to a defendant’s defense where the defendant is the declarant of the statement and is available to testify in his own behalf. Moreover, for the hearsay to be admissible under Chambers, it must be not only critical but also reliable. Id., 410 U.S. at 298, 93 S.Ct. at 1047. In this case, Mr. Jordan’s unverified, uncross-examined, self-serving statement would not meet the Chambers standard of reliability. See Gacy v. Welbom, 994 F.2d 305, 316 (7th Cir.1993) (“No court has extended [Chambers v. Mississippi ] ... to require a state to admit defendant’s own out of court words ... ”). The trial court therefore did not abuse its discretion by precluding Mr. Smith from testifying about the statement.
This assignment of error lacks merit.

DENYING THE RIGHT TO BACK-STRIKE

By a third assignment, Mr. Jordan complains that the trial court erred by not allowing him to backstrike prospective jurors during the jury selection process.
Mr. Jordan asserts that after peremptory challenges were exercised and a panel of six jurors was chosen, defense counsel noted for the record that the trial judge had previously denied the defendant’s request to backstrike potential jurors. “Counsel then added: These are not the jurors that we would have picked.” The hftCourt responded, “Very well. And I would note Defense objection.” Based upon this colloquy, Mr. Jordan argues on appeal that the trial judge denied his request to reserve two peremptory strikes to use as baekstrikes.
In opposition, the State submits that the defense failed to preserve this issue for appellate review because at the time it objected to the jury composition, it did not identify any juror whom it wished to back strike. The State emphasizes that only after the jury’s verdict, in his motion for new trial, did Mr. Jordan first identify two jurors whom he said he would have back-struck but for the trial court’s error.
To the extent the trial court refused to allow the defendant to backstrike, it erred. The statutory right to exercise peremptory challenges at any time before the jury panel is sworn has long been recognized. See State v. Watts, 579 So.2d 931 (La.1991); see also La.C.Cr.P. arts. 788, 790, and 795 B(l). Moreover, Louisiana Code of Criminal Procedure article 799.1,[7] added in 2006, codifies the Watts holding.
*396 However, this issue has not been preserved for appellate review. In State v. Hailey, 2002-1738 (La.App. 4 Cir. 9/17/03), 863 So.2d 564, the defendant did not identify any juror whom he wished to backstrike until the hearing on his motion for new trial. Id., p. 6, 863 So.2d at 567. This court concluded that a contemporaneous identification of an objected-to juror upon asserting the right to backstrike was essential to preserve the backstrike claim for review because [, ¶ otherwise the defense could “gamble upon receiving a favorable jury verdict, and then, upon the return of an unfavorable verdict, scour the voir dire transcript for jurors whom he can claim he would have baekstruck.” Id., p. 8, 863 So.2d at 569. See also State v. Lewis, 2012-1021 (La.3/19/13), 112 So.3d 796.
This assignment of error has no merit.

EVIDENCE OF PRIOR CRIMINAL CONDUCT

In his final assignment, Mr. Jordan complains that the trial court imper-missibly allowed the State to introduce evidence of narcotics transactions conducted by him prior to his arrest, in violation of La. C.E. art. 404 B(l). Mr. Jordan maintains that the evidence was unduly prejudicial because the State’s sole purpose in introducing it was to lure the jury into believing that the cocaine in the cigarette pack must belong to Mr. Jordan because of his prior involvement with drugs. Mr. Jordan specifically points to Det. Jackson’s testimony explaining that the defendant had been under surveillance prior to his arrest because police had twice purchased drugs from him out of the 1753 N. Dupre Street house, and to Sgt. Sislo’s testimony that the police had been investigating the defendant for selling heroin in New Orleans.
Mr. Jordan filed a pre-trial motion in limine seeking to bar the State from introducing evidence of his other uncharged drug activity. The trial court granted the motion; the State sought supervisory writs; and this court denied the State’s application.[8] At trial, when the State attempted to elicit the information from its witnesses, the defense objected. After a sidebar discussion, the judge allowed the State to introduce the other crimes evidence pursuant to the State’s urging that the |12defense had “open[ed] the door.” On appeal, the defendant argues that this ruling was improper. We disagree.
Mr. Jordan maintains on appeal that the law prohibits the introduction of other crimes to show the defendant as a man of bad character who has acted in conformity with his bad character. La. C.E. art. 404 B(l); see also, State v. Henderson, 2012-2422 (La.1/4/13), 107 So.3d 566. Alternatively, he contends that even if the prior bad acts evidence is otherwise relevant, it is inadmissible because its prejudicial effect outweighs its probative value. The State counters with the “open door” argument, and additionally argues that the evidence was admissible under the res gestae exception to article 404.
During its cross-examination of the detectives, the defense questioned the evidence relied upon to support the defendant’s arrest, whether the police had a warrant to search 1753 N. Dupre Street, and whether the police had provided false information to make the arrest. On redirect examination, the State elicited information from the detectives explaining that Mr. Jordan had been under surveillance prior to his arrest; that the officers had not had a search warrant; and that the officers had not falsified their report indicating that Mr. Jordan had made a statement admitting his ownership of the eo- *397 caine. Thus, the State merely clarified the facts after the defense had broached the subject.
Once the defense opens the door in cross examination on a subject, it becomes a proper subject for redirect. “The defense may not approach a prohibited area ... and then close the door to clarification by the State.” State v. Hugle, 2011-1121, p. 23 (La.App. 4 Cir. 11/7/12), 104 So.3d 598, 615 (quoting State v. Steward, 483 So.2d 155, 157 (La.App. 4th Cir.1986)). Thus, defense counsel’s questions on cross-examination opened the door for the other crimes evidence.
11sMoreover, the evidence was admissible under the res gestae exception. In State v. Taylor, 2001-1638, pp. 10-11 (La.1/14/03), 838 So.2d 729, 741-42, the Louisiana Supreme Court explained this exception:
Generally, courts may not admit evidence of other crimes to show defendant is a man of bad character who has acted in conformity with his bad character. However, under La. C.E. art. 404(B)(1) evidence of other crimes, wrongs or acts may be introduced when it relates to conduct, formerly referred to as res ges-tae, that “constitutes an integral part of the act or transaction that is the subject of the present proceeding.” Res gestae events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence “to insure that ‘the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.’ ” State v. Colomb, 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076 (quoting State v. Haarala, 398 So.2d 1093, 1098 (La.1981)). The res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. State v. Huizar, 414 So.2d 741, 748 (La.1982); State v. Kimble, 407 So.2d 693, 698 (La.1981). In addition, as this court recently observed, integral act (res gestae) evidence in Louisiana incorporates a rule of narrative completeness without which the state’s case would lose its “narrative momentum and cohesiveness, ‘with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.’ ” Colomb, 747 So.2d at 1076 (quoting Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)).
Other crimes evidence is admissible when it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978). In the present case, because Mr. Jordan’s prior bad acts occurred in close temporal proximity to his arrest and, in fact, triggered the surveillance that led to the arrest, this evidence was admissible pursuant to the res gestae exception. The | MState did not introduce the evidence to show the defendant was a bad person but to explain the sequence of events leading up to Mr. Jordan’s arrest.
Accordingly, the trial court did not err by admitting this evidence. Even if the *398 other crimes evidence had been erroneously admitted however, the error would be harmless given the substantial evidence of Mr. Jordan’s guilt.
This assignment of error has no merit.

CONCLUSION

For the reasons stated, Mr. Jordan’s conviction and sentence are affirmed.
AFFIRMED.

. Det. Burke identified the Kool package at trial and also identified the defendant in court.

. State v. Jordan, unpub., 2012-0811, p. 7 (La.App. 4 Cir. 6/11/12).

. La. C.E. art. 607 provides that a defendant may attack the credibility of a witness through the use of extrinsic evidence that contradicts the witness' testimony, provided that a proper foundation is laid for such evidence.

. Although the defendant's statement to the police contradicts the detectives' rendition of fact, the statement is not a prior inconsistent statement by either of the detectives and therefore not impeachment evidence. La. C.E. art. 607 D(2).

.In Chambers, a murder defendant called a witness who had previously confessed to the murder. When the witness repudiated the confession, the defendant was prohibited from impeaching the witness’s testimony with the prior confession because of the State's voucher rule, which barred parties from impeaching their own witnesses. The defendant also was prohibited from presenting the testimony of three other witnesses who had heard the first witness make self-incriminating statements because the State’s hearsay rules did not include an exception for statements against penal interest.

. Backstriking of jurors is authorized by La. C.Cr.P. art. 799.1, which provides:
Notwithstanding any other provision of law to the contrary, and specifically notwithstanding the provisions of Article 788, in the jury selection process, the state and the defendant may exercise all peremptory challenges available to each side, respectively, prior to the full complement of jurors being seated and before being sworn in by the court, and the state or the defendant may exercise any remaining peremptory challenge to one or more of the jurors previously accepted. No juror shall be sworn in until both parties agree on the jury composition or have exercised all challenges available to them, unless otherwise agreed to by the parties.

. State v. Jordan, unpub., 2012-0952 (La.App. 4 Cir. 6/25/12).