DANIEL L. DYSART, Judge.
| jTerranee Augustine appeals his conviction and sentence for introducing contraband into Orleans Parish Prison. For the following reasons, we affirm his conviction and remand this matter to the trial court to consider his Motion to Reconsider Sentence.
PROCEDURAL BACKGROUND:
The State of Louisiana charged Terrance Augustine on December 19, 2011 with the introduction of a knife into the Orleans Parish Prison in violation of La. R.S. 14:402, a charge to which he pled not guilty. A six-person jury found Augustine guilty as charged. Augustine filed motions for post-verdict judgment of acquittal and for new trial. The court denied these motions and sentenced Augustine to serve four years at hard labor. Augustine moved for a reconsideration of sentence, but there is no indication in the transcript that the court ruled on the motion[1]. Nonetheless, the court granted his motion for appeal.
LFACTUAL BACKGROUND:
Terrance Augustine was found in possession of a knife during his transfer from one facility of the Orleans Parish Prison to another. On November 27, 2011, Augustine arrived at the Old Parish Prison building from Conchetta, another facility of the Orleans Parish Prison. Lieutenant Kenneth Johnson of the Orleans Parish Sheriffs Office testified that when Augustine arrived, he was placed in a holding cell and then taken to a hallway outside a tier. In response to Lt. Johnson’s order, and in accordance with standard procedure, Augustine disrobed and placed his clothing on the floor in front of him. Lt. Johnson searched each piece of clothing, and when he lifted Augustine’s underwear, it felt heavy. He found a knife attached to the underwear by a string. Lt. Johnson testified that Augustine had been incarcerated for several months at this time.
*112 Upon finding the knife, Lt. Johnson called Sergeant Rickson of the Special Operations Division. Once Sgt. Rickson arrived, he advised Augustine of his rights. Although Augustine refused to sign a waiver of rights form, he admitted that' he understood his rights. He told the officers that he had the knife for his protection, but he refused to say where he had gotten the knife. Lt. Johnson testified that he was not aware of any fight involving Augustine, nor did he know if Augustine had been stabbed previously. He stated that there were no signs that day that Augustine had been attacked.
Lt. Johnson stated that this was the first real knife that he had ever seized from a prisoner, while he had confiscated “thousands” of shanks.
Sergeant Gregory Rickson of the Orleans Parish Sheriffs Office was assigned to the Special Operations Division and explained that one of his duties was to investigate incidents that occurred in the jail. He testified that Lt. Johnson | ..¡called him in connection with the knife he seized from Augustine’s underwear. Augustine refused to tell him where he had gotten the knife, but he insisted that he had the knife for his protection, and he admitted that he was in possession of the knife for about a month.
The correction officers were unaware of any instance of harm or threatened harm to Augustine.
DISCUSSION:
In his first assignment of error, defendant contends that the trial court erred by denying him the opportunity to present a defense of justification and by denying his motion for new trial based on this claim. He asserts that the court’s limitations during voir dire and its refusal to instruct the jury on the issue of justification deprived him of a fair trial.
Defendant contends that the trial court impinged on his right to present a justification defense for his possession of the knife. He asserts that this error began during voir dire, when the court indicated that it would not allow the parties to question the jurors about the issue of justification. A reading of the voir dire shows that the court made the following comment to the jury: “[wjhen I read you the jury instructions at the conclusion of this case ..., there will not be anything in there about self defense. So since there is not going to be anything in there about self defense it is nothing that you can consider.” Defense counsel did not object to this statement.
Notwithstanding, both the prosecutor and defense counsel were allowed to question the jurors on the subject of self-defense and justification. The prosecutor questioned the jurors about whether the fact that a prisoner felt threatened would give him the right to arm himself, and thus they would not be able to return a guilty Rverdict even if the State proved that the defendant was an inmate and possessed a knife, the only two elements of the crime with which he was charged. Defense counsel objected to this questioning, asserting that the hypothetical questions were very close to the facts of the case. During a sidebar conference, counsel stated that a legal verdict included the jurors’ consideration of whether justification applied. Counsel stated: “But if self defense is a defense and I am not saying — he is taking away the juries [sic] ability to weigh on this” because the prosecutor was asking questions “exactly similar” to the facts in the case. The court responded that it was concerned about allowing any questioning about justification because it was not going to instruct the jury on that defense. The court rejected defense counsel’s assertion that the “justification” was the defendant’s *113 possession of the knife, stating that a defense must be relevant to the charge, and the court had not seen any case where justification was used in a case like the one before the court. The court then instructed the attorneys to continue their voir dire questioning, indicating that it would have its law clerk conduct research on the issue.
During the defense questioning of the potential jurors, counsel raised the issue of justification in several hypothetical situations where citizens would be justified in technically breaking a law to aid others in danger. Counsel was also allowed to question the potential jurors about their knowledge of the dangerous climate in the jail, with the court implicitly overruling the State’s objections to this questioning by its assertion that it would allow defense counsel some leeway in her questions. Thus, although the court indicated that the issues of justification and self-defense were not relevant, it allowed defense counsel to question the jury on these issues.
IflAt trial, during her cross-examination, defense counsel was allowed to question Lt. Johnson about violence he had seen while employed at the Orleans Parish Prison. In addition, she was able to question Sgt. Rickson about the grievance procedures that are in place in the prison that an inmate can use to report threats and violence against him by other inmates. Contrary to the defendant’s argument, the defense was allowed to question the State’s witnesses about the violent climate in the jail. The defense did not question either of the witnesses about whether the defendant made any complaint or filed any grievance concerning any threats or violence against him, nor did it present any evidence to assert the defense of justification.
Defendant next points to comments during closing argument that precluded the jurors from considering the defense of justification. During her closing argument, counsel alluded to the crowded conditions in prison and the ratio of deputies to inmates, and the court overruled the State’s objection to this argument, noting that the jurors could believe or reject argument by the attorneys. The court sustained the State’s objection to counsel’s statement that the defendant was not a seasoned inmate like the rest of the inmates in his cell who were “armed and ready to get him at any time.” The court also instructed defense counsel not to ask the jurors to “put themselves in the shoes of the defendant” when counsel asked the jurors to imagine themselves in a room with older, bigger, and stronger men whom they did not know. Counsel did not note any objection to this instruction.
During the State’s argument, defense counsel objected to the prosecutor’s question to the jurors about whether they had heard any evidence that the defendant had been threatened, asserting that the State had not produced any evidence that it did not happen. The defendant points to the prosecutor’s argument 1 fithat while the State wanted six jurors who would listen to the evidence and follow the law, the defense “did the complete opposite” and was “looking for the six jurors who will ignore the law. That is what you are to [the defense], the six jurors ... who will here [sic] this, ignore the law and justify this conduct and send these two veterans of the Orleans Parish Sheriff’s Office back to the prison with this justified. Is this how you want to thank them for their service?”
After the jury had retired to deliberate, defense counsel noted her objection to the court’s refusal to instruct the jury on the defense of justification, asserting that the court should have instructed the jury that if it found that the defense showed the defendant’s conduct was justified, the *114 State had the burden of proving beyond a reasonable doubt that the defendant’s conduct was not justified, citing a civil law treatise of proposed jury instructions. Counsel argued that the issue of whether the defense had shown a justification was a factual issue, not a legal one, and the court’s refusal to instruct the jury on justification “usurped the province of the jury.” Counsel also cited to two reports from the Department of Justice concerning the state of Orleans Parish Prison. She asserted that during voir dire, the State “intimated that perhaps Mr. Augustine was the cause of the problems that are occurring, one of the causes of the problems that are occurring. My position would be that by that comment made by him that the justification was kind of like brought into question even more. That [sic] my right to present that justification defense was not served by his inappropriate comment.”
Defendant argues that these portions of closing arguments and the court’s refusal to instruct the jury on the defense of justification are reversible errors.
Louisiana Revised Statute 14:19 sets forth the provisions for the defense of justification. The statute provides in part:
|7A. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person’s lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this Section shall not apply where the force or violence results in a homicide.
A justification defense to a charge of introducing contraband into a penal facility has not been reviewed by courts in Louisiana. However, there have been cases in which justification was raised as a defense to a charge of being a convicted felon in possession of a firearm or dangerous weapon. In those cases, courts have held that the justification only occurs when the defendant is in imminent threat of danger and only lasts while the threat is imminent. The common thread in those cases was evidence of an actual threat of danger that the defendants faced when they armed themselves. See State v. Jones, 12-0510, p. 5 (La.App. 4 Cir. 6/12/13), 119 So.3d 859, 862 (defendant continued to possess gun twenty minutes after the threat of harm had passed); State v. Sanchell, 11-1672, p. 7 (La.App. 4 Cir. 10/31/12), 103 So.3d 677, 681, writ denied 12-2554 (La.4/26/13), 112 So.3d 839 (defendant’s justification for possessing weapon was limited to time when he was acting in self-defense); State v. Goosby, 47,772, p. 12 (La.App. 2 Cir. 3/6/13), 111 So.3d 494, 502 (threatening juveniles had retreated and defendant was no longer in imminent peril of great bodily harm).
Here, defense counsel was allowed to raise the issue of justification during voir dire and was able to question Lt. Johnson about violence in Orleans Parish Prison. However, there was no evidence produced at trial that the defendant had been threatened or had been the victim of violence. In addition, there was no evidence that at the time that he was found in possession of the knife he was in | (¡imminent danger; at best, the evidence produced at trial only showed an unspecified fear on the defendant’s part that he might be threatened. Indeed, the defendant was in the process of being moved from one facility to another when he was found in possession of the knife. Given the lack of any evidence of any harm or threatened harm, we do not find that the trial court erred by refusing to instruct the *115 jury on the defense of justification. This assignment has no merit.
II.
In his second assignment, defendant asserts that the trial court erred by denying his motion for mistrial. He argues that he was deprived of a fair trial by the prosecutor’s remarks that inaccurately inferred that he had a prior criminal record, that made a personal attack on his counsel, and that directed the jury to return a guilty verdict as thanks for the work of the two OPSO officers.
As per La.Code Crim. Proc. art. 774, the scope of closing argument “shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” Art. 774 further provides that closing argument “shall not appeal to prejudice,” and the State’s rebuttal argument “shall be confined to answering the argument of the defendant.” A prosecutor should refrain from making personal attacks on defense strategy and counsel. State v. Manning, 03-1982, p. 75 (La.10/19/04), 885 So.2d 1044, 1108 (citing State v. Brumfield, 96-2667 (La.10/20/98), 737 So.2d 660 and State v. Duplessis, 457 So.2d 604 (La.1984)). While jurisprudence has found that prosecutors may not refer to personal experience or turn their argument into a commentary on crime, prosecutors have “wide latitude in choosing closing argument tactics.” State v. Clark, 01-2087, p. 15 (La.App. 4 Cir. 9/25/02), 828 So.2d 1173, 1183. See also State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022.
As noted in by this court in State v. Jones, 10-0018, p. 9 (La.App. 4 Cir. 11/10/10), 51 So.3d 827, 833:
Even where a prosecutor’s argument has exceeded the scope of art. 774 or is deemed to be improper, a reviewing court should credit the good sense and fairmindedness of the jurors who have heard the evidence. State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703; Clark; State v. Ricard, 98-2278, 99-0424 (La.App. 4 Cir. 1/19/00), 751 So.2d 393. In addition, “a reviewing court will not reverse a conviction unless thoroughly convinced’ that the argument influenced the jury and contributed to the verdict.” Clark, at p. 15, 828 So.2d at 1173. See also State v. Draughn, 2005-1825 (La.1/17/07), 950 So.2d 583; Casey; State v. Wiltz, 2008-1441 (La.App. 4 Cir. 12/16/09), 28 So.3d 554. As the Court noted in Draughn: “Mistrial is a drastic remedy, and the determination of whether prejudice to the defendant has resulted from the prosecutor’s comments lies in the sound discretion of the trial judge. State v. Leonard, 2005-1382 p. 11 (La.6/16/06), 932 So.2d 660, 667. Moreover, a trial judge has broad discretion in controlling the scope of closing argument. State v. Prestridge, 399 So.2d 564, 580 (La.1981).” Draughn, at p. 44, 950 So.2d at 614.
(emphasis added.)
Here, defendant first refers to an objection that the prosecutor made during the defense closing argument that he maintains inferred that he had a prior criminal record. At the time of the present offense, defendant was a pretrial detainee on a charge for which he was later acquitted. During closing argument, defense counsel stated: “Terrance wasn’t some hardened criminal. They want to make a big deal out of this knife.” The prosecutor objected, stating merely: “I would object to that statement, Judge.” The court overruled the objection. After the jury had retired to | ^deliberate, defense counsel moved for a mistrial. The trial court denied the motion, explaining that it had instructed the *116 jury that closing argument was not evidence.
Defendant argues that the State’s objection improperly suggested that he had a prior criminal record. He asserts that under the mandatory mistrial provision of La.Code Crim. Proc. art. 770(2), the trial court should have granted his motion for a mistrial because the statement was a reference to another crime “committed by or alleged to have been committed by the defendant as to which evidence is not admissible.” We do not find that the objection raised by the State was an implied comment on a possible criminal record. He simply objected to the comment without further elaboration. Thus, we find no error by the trial court in rejecting the defense’s argument that the prosecutor’s comment implied that the defendant had a prior criminal record.
The remaining comment to which the defendant refers in this assignment occurred during the State’s rebuttal argument when the State commented that if the jury ignored the law as the defense suggested, and acquitted the defendant, it would send a detrimental message to law enforcement, particularly guards at Orleans Parish Prison. The defense objected to the comment, but was overruled.
Defendant now asserts that this argument was improper because it was a personal attack on defense counsel and it told the jury that it would be thankless if it returned a not guilty verdict. He argues that counsel moved for a mistrial with respect to this argument as well. Crediting the “common sense and fair-mindedness” of the jury, as set forth in the cases cited above, it cannot be said that the prosecutor’s argument referenced by the defendant improperly influenced the jury and contributed to the verdict. This assignment of error has no merit.
III.
|nA review of the record for patent errors reveals two errors that will require the remand of this case and will render defendant’s third assignment premature. The court denied defendant’s motion for new trial and sentenced him on the same day, failing to observe the mandatory twenty-four-hour delay as set forth in La. Code Crim. Proc. art. 873. As per State v. Collins, 584 So.2d 356, 359 (La.App. 4 Cir. 1991), the failure to observe the twenty-four-hour delay mandated by La.Code Crim. Proc. art. 873 is harmless where the defendant does not complain of his sentence on appeal. See also State v. Pleasant, 11-1675 (La.App. 4 Cir. 10/17/12), 102 So.3d 247, 255. However, defendant’s third assignment of error raises an excessive sentence claim.
Therefore, the second patent error prohibits this Court from considering the excessive sentence claim because there is no indication that the trial court ruled on the defendant’s motion to reconsider his sentence. The failure of a trial court to rule on a motion to reconsider sentence requires that the case be remanded for a ruling and that appellate review of a defendant’s sentence be deferred. See State v. Peters, 10-0326, p. 4 (La.App. 4 Cir. 2/16/11), 60 So.3d 672, 675; State v. Hailey, 02-1738, p. 4 (La.App. 4 Cir. 9/17/03), 863 So.2d 564, 566-67. Thus, we remand this case to the trial court for ruling on the motion to reconsider sentence, reserving to the defendant his right to appeal his sentence once the trial court has ruled on the motion.
There are no other patent errors.[2]
*117 | ^CONCLUSION:
Accordingly, we affirm Terrance Augustine’s conviction, pretermit discussion of his excessive sentence argument, and remand the case for the trial' court’s ruling on his motion to reconsider sentence, reserving his right to appeal his sentence once the court rules on the motion.
CONVICTION AFFIRMED; REMANDED.

. The docket master indicates that the trial court denied the motion to reconsider sentence; however, the transcript does not so reflect. Where there is a discrepancy between the docket master (minute entry) and the transcript, the transcript prevails. State v. Randall, 10-1027 (La.App. 4 Cir. 6/22/11), 69 So.3d 683, writ den., 11-1560 (La.1/13/12), 77 So.3d 952.

. While the present version of La. R.S. 14:402 provides for a mandatory fine in addition to imprisonment, this mandate was added after the offense occurred in this case.