JOY COSSICH LOBRANO, Judge.
| ¡¿Defendant, Sade Hickman (“Defendant”), appeals her conviction and sentence for attempted manslaughter for which she was sentenced to twenty years at hard labor. We affirm her conviction, remand the case for the district court to rule on an unresolved motion to reconsider sentence, and reserve Defendant’s right to appeal her sentence once the district court has ruled on Defendant’s motion to reconsider.

PROCEDURAL AND FACTUAL BACKGROUND

On April 18, 2013, Defendant was charged by grand jury indictment with the attempted second degree murder of a seventeen-year-old female (“Victim”), in violation of La. R.S. 14:27, 14:3o.!.[1] Defendant appeared for arraignment on April 24, 2013 and entered a plea of not guilty. On December 17-19, 2013 and January 8, 2014, the district court heard testimony on defense motions to suppress evidence and to suppress identification. The district court denied the motions to suppress evidence and identification.
Trial by jury commenced on November 12, 2014. On November 14, 2014, Defendant was convicted by a 10-2 jury of the responsive verdict of attempted ^manslaughter under La. R.S. 14:27,14:31. The following evidence was presented at trial.
New Orleans Police Department (“NOPD”) Detective Tristan Carter (“Det. Carter”) testified that on February 17, 2013, around 7:00 p.m., while he was in the First District office located at St. Louis and Rampart Streets, he heard gun shots. Det. Carter responded by getting into his vehicle and driving down St. Louis Street. As Det. Carter was driving, dispatch advised that a person was shot on Crozat and St. Louis Streets. Det. Carter, as the first police officer present on the scene, found Victim lying on the ground with people standing around her. Victim was lying on her back, bleeding, and appeared to be in a lot of pain. Emergency Medical Services (“EMS”) arrived and transported Victim to the hospital. Det. Carter identified photographs of the scene depicting where Victim was located, bullet casings, and Victim’s belongings — a purse, hat and shoes.
Victim was transferred by EMS to University Hospital where Det. Carter spoke with her while she was in the intensive care unit. Victim told Det. Carter that “Ceedy” shot her, that “Ceedy” was a nickname, and that “Ceedy” had gold hair.
*1163 NOPD Detective Thomas Ripp (“Det. Ripp”). compiled six photographs for NOPD Detective Shawn Jenkins (“Det.. Jenkins”) to present to Victim in a blind lineup. Since a current Instagram photograph of Defendant with gold hair provided by a witness was too suggestive to use in the lineup, the police used a school photograph and created a lineup where no individual had gold hair. Because it was a blind lineup, Det. Jenkins was unaware of which photograph in the lineup depicted the suspect. Victim positively identified Defendant from the photographs as the person who shot her.
|4Det. Carter testified that K.M., a female acquaintance of Victim, had been accompanying Victim throughout the night when Victim was shot. K.M. reported that, on the night in question, she had observed another female, D.J., and a few of D.J.’s friends engaged in an altercation with another group of females that may have , included Defendant. K.M. stated that she overheard that “Ceedy” was also present at the time. Det. Carter testified that Victim, however, denied that D.J. was involved in an altercation with Defendant. Det. Carter also indicated that he might not have been able to get all of the facts from Victim due to her condition. Det. Carter obtained a copy of a surveillance video from a McDonald’s on Canal Street that showed Victim and Defendant at the same location. Det. Carter testified that a McDonald’s manager had asked the larger of the two groups of females to leave the location; that Victim had been part of the larger group; and, that Defendant and her smaller group had entered the McDonald’s first. A school resource officer contacted NOPD and identified the suspect as Defendant based on the surveillance video and the Instagram photograph which had been released to the media.
Another witness, L.B., testified that she saw the shooting from'an apartment balcony at the intersection of ■ St. Louis and Treme Streets. L.B. testified that despite the shooting occurring in the early evening, streetlights illuminated- the area. L.B. informed Det. Ripp that she had captured the shooting on- her cell phone camera. In the cell phone' footage, people weré heard'asking, “Did ‘Ceedy’ have that gun?” and “Was that ‘Ceedy" with the gun?”.
In the moments leading up to the shooting, L.B. heard people saying, “Get out the way, a car coming, get out the way,” and “All right, bitch.” She witnessed several girls on both sides “going at it verbally and using profanity” and then a male running to his vehicle, taking out a pistol, and shooting it in the air. The man |5then walked towards a’woman, whom L.B. later identified as Defendant, and handed the gun to her before returning to the truck. Defendant then jumped into the truck. L.B. witnessed the truck slow down and the woman shoot out the window while saying, “Bitch, I got you now, I got you now.” At that point, Victim fell to the ground, and. L.B. ran from her balcony down to the street to help.
L.B. testified that the shooter was a young, light-skinned woman wearing a lavender purple shirt. L.B. was hot able to identify Defendant from the McDonald’s video.[2] However, Det. Ripp showed L.B. a photograph of Defendant, and L.B. identified Defendant as the shooter. Using the Instagram photograph, he stated that L.B. was “probably 72 out of 100” certain that the person in the.picture, Defendant, was *1164 the shooter, but that the curls in her hair were different. L,B. testified that she saw Defendant and approximately fourteen other people arguing with the smaller group of people, including Victim.
Victim testified that everybody was bickering, and she was not. part of the fight since she was not part of either group. Her sole connection'to one group was that she said hello and talked to one friend she knew. Victim testified that she saw the truck pull up next to her with Defendant sitting next to a rolled down window, with girls in the car shouting at Defendant to “[g]et that bitch, get that bitch, shoot that ho, shoot the ho.” Defendant then leaned out the window saying, “I got you now, bitch,” before shooting Victim three times. Victim showed the jury three scars from bullet wounds and stated that one of the bullets exploded in her spine, paralyzing her for life. Victim stated one of the bullets remains inside her. Victim stated she was looking at Defendant when the shooting occurred and was able to | ¿identify her as the “Ceedy,” whom -she had encountered earlier in the night.' Victim stated- she was 100% certain that it was Defendant who shot her. Victim testified, “I could barely breathe. I was dying. I was fighting for my life.” Victim testified further, “And as I’m on the operating bed, they said my lungs went out so they had to insert chest tubes, one to put air back in my lungs and the other one to drain them.”
After the verdict, a pre-sentence investigation was conducted and a pre-sentencing report was received on January -28, 2015. On March 17, 2015, Defendant appeared for a hearing on her “Motion to Reconsider Sentence, Motion for New Trial and for Pbst-Verdict Judgment of Acquittal.” Defendant’s motion was denied by the district court on March 20,2015.[3]
On April 24, 2015, Defendant appeared for sentencing and was sentenced to twenty years at hard labor. During the sentencing hearing, the district court heard from Defendant’s grandmother, and also considered an impact statement previously provided by Victim. An oral motion to reconsider sentence was. denied by the district court. A renewed written motion to reconsider sentence based on the sentence being excessive was filed and denied on April 28, 2015; on that same day, Defendant filed a notice of appeal and designation of record. Defendant’s notice of appeal was granted on April 28, '2015, and a return date of July 2, 2Ó15 was set. On May 21, 2015, Defendant filed an additional motion to ^reconsider sentence.[4] On June 2, 2015, Defendant requested a continuance of the hearing on the motion to reconsider sentence. The motion to reconsider sentence was re-set for August 20, 2015. The record reflects, however, that defense counsel did not appear for the August'20, 2015 hearing. Instead, on July 2, 2015, defense counsel’s motion to withdraw as counsel of record was granted, and the Louisiana Appellate Project was appointed to represent Defendant on appeal.
The record was lodged in this Court on August 3, 2015. Defendant’s brief was timely filed on October 8, 2015. A reply brief filed by the State of Louisiana *1165 (“State”) was also timely filed bn November 23, 2015.
Defendant presents five assignments of error: (1) whether the sentence of twenty years' imposed upon Defendant is legally excessive; (2) whether the district court erred in denying Defendant’s motion to reconsider sentence; (3) whether the district court erred in denying Defendant’s post-verdict motion for judgment of acquittal and motion for new trial; (4) whether the jury’s verdict is contrary to the law and evidence; and, (5) whether Defendant’s conviction by a non-unanimous jury violated her rights under the Fifth, Sixth and Fourteenth Amendments and the Louisiana Constitution.

ERRORS PATENT

The record does not reflect that the district court ruled on Defendant’s last written motion to reconsider her sentence for attempted manslaughter, which was timely filed on May 21, 2015, within thirty days of the April 24, 2015 sentencing. The failure of a trial court to rule on a motion to reconsider sentence requires that the case be remanded for a ruling thereon, and that appellate review of a defendant’s sentence be deferred. State v. Augustine, 2013-0164, p. 11 (La.App. 4 Cir. 12/4/2013), 131 So.3d 109, 116; State v. Peters, 2010-0326, p. 4 (La.App. 4 Cir. 2/16/11), 60 So.3d 672, 675; State v. Hailey, 2002-1738, p. 4 (La.App. 4 Cir. 9/17/03), 863 So.2d 564, 566-67. However, the failure to rule on a motion to reconsider sentence does not preclude review of the conviction. Peters, 2010-0326 at p. 4, 60 So.3d at 675; State v. Foster, 2002-0256, p. 3 (La.App. 4 Cir. 9/11/02), 828 So.2d 72, 74.

DISCUSSION

In her first two assignments of error, Defendant contends that the district court’s sentence of twenty years at hard labor is legally excessive, and that the district court erred when it denied her motion to reconsider her sentence. As stated above, the district court failed to rule on- one of the motions tb reconsider sentence which was filed on May 21, 2015; therefore, consideration of Defendant’s first and second assignments of error relating to- her sentence are deferred until the district court has issúed a ruling on Defendant’s timely filed motion to reconsider sentence.
In her third and fourth assignments of error, Dfefendant contends that the verdict of attempted manslaughter is contrary to the law and evidence, and the district court erred in denying her post-verdict motion for judgment of acquittal and motion for new trial.[5] Specifically, Defendant contends that the State failed to prove she had the specific intent to MU as required by the initial charge of attempted second degree murder.
IsA conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. The Louisiana Supreme Court set forth the standard for evaluating a claim of insufficient evidence in State v. Brown, 2003-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18:
When reviewing the sufficiency of the evidence to support a conviction, Louisi *1166 ana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, [20]00-0674 (La.6/29/01) 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
When circumstantial evidence is used to prove the commission of the offense. La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Neal, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. Id. (citing State v. Rosiere, 488 So.2d 965, 968 (La.1986)).
“If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’?s view of all of the evidence most favorable to the prosecution must be adopted.” State v. Green, 588 So.2d 757, 758 (La.App. 4th Cir.10/29/91). It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Scott, 2012-1603, p. 11 (La.App. 4 Cir. 12/23/13), 131 So.3d 501, 508 (citing State v. Johnson, 619 So.2d 1102, 1109 (La.App. 4th Cir.1993)). Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. Id., (citing State v. Brumfield, 93-2404, p. 6 (La.App. 4 Cir. 6/15/94), 639 So.2d 312, 316). Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. State v. Jones, 537 So.2d 1244, 1249 (La.App. 4th Cir.1989). Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’s testimony, if believed by the fact finder, is sufficient to support a factual conclusion. State v. Marshall, 2004-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369.
This Court, in State v Sparkman, 2008-0472, pp. 6-7 (La.App. 4 Cir. 1/28/09), 5 So.3d 891, 895, stated that the Jackson standard is legislatively embodied in La. C.Cr.P. art. 821(B), which provides that a “post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.”
Defendant was charged with attempted second degree murder; the jury, however, returned a responsive verdict of attempted manslaughter.[6] A reviewing court need not determine whether *1167 the evidence supports the responsive verdict returned by the jury where the defendant does not object Into the inclusion of the responsive verdict and the evidence is sufficient to support a conviction of the greater offense charged. State v. Alverez, 2013-1652, p. 6 (La.App. 4 Cir. 12/23/14), 158 So.3d 142, 148 (citing State v. Colbert, 2007-0947, p. 13 (La.App. 4 Cir. 7/23/08), 990 So.2d 76, 84-85 (internal citations omitted)). See also State ex rel. Elaire v. Blackburn, 424 So.2d 246, 251(La.1982).[7] Defendant did not object to the inclusion of the responsive verdict of attempted manslaughter. Thus, to prove attempted second degree murder, the State had to establish beyond a reasonable doubt that Defendant had the specific intent to kill a human being and committed an overt act in furtherance of that goal. La. R.S. 14:27; 14:30.1; State v. Bishop, 2001-2548, p. 4 (La.1/14/03), 835 So.2d 434, 437. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent need not be proven as fact but may be inferred from the circumstances and the actions of the accused. State v. Everett, 2011-0714, p. 14 (La.6/13/12), 96 So.3d 605, 619. The specific intent to kill may be inferred from a defendants deliberate act of pointing a gun and firing in the direction of the victim. Brown, 2003-0897 at p. 22, 907 So.2d at 18; State v. Seals, 95-0305, p. 6 (La.11/25/96), 684 So.2d 368, 373.
The evidence was sufficient to infer from the circumstances that Defendant specifically intended to kill Victim and that she committed an overt act in furtherance of that goal. Defendant shot Victim three times in the torso while Victim was a relatively short distance away.' Victim was in a defensive posture behind a car, unarmed, unprotected, and defenseless. Defendant yelled at Victim “Bitch, I got you now” prior to shooting her. One bullet hit Victim in the spine, exploding in her spine and paralyzing her for life. She sustained another gunshot |12wound to the body when she had’lifted her arm to protect her head. Victim also testified that when she was at the hospital on the1 operating bed, her lungs collapsed, requiring' one chest tube to re-inflate her lungs and another chest tube to drain fluid; she required care in the intensive care unit. In addition, Victim .stated that she was dying, and claimed, “I was fighting for my life.”
Defendant asserts that one of the definitions of attempted manslaughter provided to the jury in its instructions did not include a specific intent to kill requirement. The record reflects Defendant failed to object to the jury charge when the district court provided the parties in advance with a written copy of the jury instructions it was to give; and after the *1168 instruction's were provided orally, Defendant again failed to object. Therefore, this argument has been waived on appeal. La.C,Cr.P. art. 801(C); La.C.Cr. P. art. 841. .Additionally, even if the lack of a contemporaneous objection did not bar review, there is ample basis for concluding that the erroneous jury charge on attempted manslaughter was harmless. State v. Porter, 2000-2286, pp. 20-26 (La.App. 4 Cir. 12/27/01), 806 So.2d 64, 77-81. Accordingly, these assignments of error lack merit.
In her fifth and final assignment of error, Defendant contends that the jury returned a non-unanimous (10-2) verdict in violation of. her constitutional rights as protected by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and its equivalent provisions of the Louisiana Constitution.
Louisiana Code of Criminal Procedure article 782 permits a verdict where ten of twelve jurors agree when the defendant is charged with a crime necessarily punishable at hard labor. This article follows the Louisiana Constitution which | ¡.¡provides: “A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict.” La. Const, art. 1, § 17(A).
The United States Supreme Court addressed the argument that a non-unanimous jury requirement in the state courts violates the U.S. Constitution in Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).[8] In Apodaca, a plurality of the Court found that the right to unanimity in a jury verdict was not a right “of constitutional stature” sufficient to justify a unanimous jury verdict requirement binding on the state courts. Id. at 406, 92 S.Ct. at 1630,[9] Although Apodaca was a plurality.[10] rather than a majority decision, the United States Supreme Court has cited or discussed the opinion numerous times since its issuance; and its holding as to non-unanimous jury verdicts represents well-settled law. Louisiana's courts have consistently agreed and cited the decision.
In State v. Bertrand, 2008-2215, pp. 6-7 (La.3/17/09), 6 So.3d 738, 742, the Louisiana Supreme Court held that non-unanimous jury verdicts were not unconstitutional. The Court noted that La. C.Cr.P. art. 782 “withstands | ^constitutional scrutiny,” and the Court refused to assume that the United States Supreme Court’s “still valid determination that non-unanimous twelve-person jury verdicts are still consti *1169 tutional may someday be overturned.” Id., 2008-2215 at p. 8, 6 So.3d at 743. See also State v. Barbour, 2009-1258, p. 16 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, 1151, writ denied, 2010-0934 (La.11/19/10), 49 So.3d 396, cert. denied, 562 U.S. 1217, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011) (rejecting a defendant’s argument that a non-unanimous jury verdict violated the Fifth, Sixth and Fourteenth Amendments, and noting “Bertrand is dispositive of defendant’s argument in this assignment of error which we find is meritless.”); State v. Frith, 2013-1133, pp. 18-19 (La.App. 4 Cir. 10/22/14), 151 So.3d 946, 957 (finding that a defendant failed to meet his burden of proving either that La. Const, art. I, § 17(A) or La.C.Cr.P. art. 782(A) is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment in a challenge to Louisiana’s system allowing non-unanimous jury verdicts).
Defendant, however, argues that Louisiana’s use of non-unanimous jury verdicts is ripe for reconsideration, in light of the United States Supreme Court’s holding in McDonald v. City of Chicago, Ill., 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). In McDonald, the Court considered whether the Due Process Clause of the Fourteenth Amendment incorporated the Second Amendment right to bear arms and made it binding on the states. Id. The McDonald Court detailed its jurisprudential history of “selective incorporation” of the Bill of Rights through the Fourteenth Amendment and explained that only- those rights deemed “fundamental,” ie., those which were of such 'a nature as to be considered the |is“essence of a scheme of ordered liberty” and essential to “a fair and enlightened system of justice” are deemed incorporated. Id. at 760, 130 S.Ct. at 3032 (citations omitted). . The McDonald Court then concluded that the Second Amendment right to keep and bear arms is such a fundamental right, and thus is fully applicable to the States through the Fourteenth Amendment. Id. at 778, 130 S.Ct. at 3042. The Court also discussed its past rejection of a “total incorporation” theory, noting that not all rights set out in the Bill of Rights meet the requirements for inclusion within the Due Process Clause of the Fourteenth Amendment. Id. at 764-65, 130 S.Ct. at 3034-35. Specifically, the Court acknowledged that the Sixth Amendment’s right to a unanimous jury verdict was one of a “handful of the Bill of Rights protections [which] remain unincorporated.” Id. McDonald thus supports Apodaca ⅛ continued viability. Frith, 2013-1133 at pp. 16-17, 151 So.3d at 955-56; State v. Mack, 2012-0625, p. 5 (La.App. 4 Cir. 5/6/15), 162 So.3d 1284, 1288. We find no reason,1 therefore, to depart from well-established precedent holding that the Due Process Clause does not require unanimous jury verdicts in state criminal trials based on the McDonald decision.
Under both state and federal jurisprudence, a criminal conviction by less than a unanimous jury does' not violate Defendant’s right to trial by jury as specified by the Louisiana Constitution, or the Sixth Amendment as made applicable to the states by the Due Process Clause of the Fourteenth Amendment. See Apodaca, 406 U.S. at 406, 92 S.Ct. at 1630; Bertrand, 2008-2215 at pp. 6-7, 6 So.3d at 742, Defendant’s constitutional rights were not violated by her 10-2 jury verdict. Defendant’s fifth assignment of error is without merit.[11]
*1170 JhfiFor the foregoing reasons, we affirm Defendant’s conviction for attempted manslaughter and remand the case to the district court for a ruling on Defendant’s motion to reconsider her sentence for attempted manslaughter, reserving her right to appeal that sentence once the district court has ruled on her motion to reconsider.
CONVICTION AFFIRMED; REMANDED.

. Defendant was 16 years of age at the time of the offense but was tried as an adult.

. L.B. identified a person in pink with blond hair as the shooter after viewing the Me-Donald’s video,

. Since Defendant had yet to be sentenced, this motion to reconsider sentence would have, presumably, been premature,

. Although appearing on its face as a repetitive motion to reconsider sentence, the motion was timely filed within thirty days of Defendant's sentencing. See La.C.Cr.P. art. 881.1(A)(1) (providing that a defendant may file a motion to reconsider sentence within thirty days of imposition of sentence), Rather than summarily deny the motion, the district court set the matter for hearing.

. Although the district court’s denial of Defendant’s post-verdict judgment of acquittal requires appellate review of the sufficiency of the evidence, the denial of a motion fox new trial based upon La.C.Cr. .P, art. 851(1), i.e., that the verdict is contrary to the law and evidenqe, is not subject to. review on appeal. State v. Guillory, 2010-1231, p. 3 (La.10/8/10), 45 So.3d 612, 614-15; State v. Frith, 2011-0187, p. 5 (La.App. 4 Cir. 8/10/11), 102 So.3d 65, 69.

. Attempted manslaughter is listed as a responsive verdict for attempted second degree murder. La.C.Cr. P. art. 814(A). Moreover, La. R.S. 14:31(A) defines manslaughter, in pertinent part, as "A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection,” Attempt is defined by La. R.S. 14:27(A), as follows: "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.” La. R.S. 14:30.1(A) provides, in pertinent part that second degree murder is the killing of a human being (l)When the offender has a specific intent to kill ...

. In State ex rel. Elaire, 424 So.2d at 249, the Court noted that the 1982 amendment adding Section C to Article 814 gives the trial judge discretion, on motion of either side, to exclude a responsive verdict which is not supported by the evidence. Id. Therefore, even if the offense is legislatively designated as responsive by Article 814, the defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. Id. If the court overrules the objection and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the. evidence and may reverse the conviction if the evidence does not . support the verdict. Id. However, if the defendant does not enter an objection (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury. Id. at 251.

. See also Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (holding that the Due Process Clause does not require unanimous jury verdicts in state criminal trials).

.- As was noted by the Apodaca Court, the requirement of unanimity of a jury verdict is not mentioned in the Sixth Amendment, which provides:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public • trial, -by an impartial jury of the State and district wherein the crime shall have been committed, which, district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted .with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Asáistance of Counsel for his defence.

.Four justices concluded that the Sixth Amendment did not require unanimous jury verdicts, another four concluded that it did require unanimous jury verdicts and that the Fourteenth Amendment applied the requirement to the states through the Due process Clause. The remaining justice concluded that while the Sixth Amendment did require unanimous jury verdicts, the Fourteenth Amendment did not apply the requirement to the states.

. Defendant initially asserts that her challenge to a non-unanimous jury verdict is based upon the Fifth, Sixth and Fourteenth Amendments and similar Louisiana Constitutional provisions; however, she makes no specific argument relative to the Fifth Amend *1170 ment This Court has previously rejected a challenge to a non-unanimous jury verdict based on the Fifth, Sixth and Fourteenth Amendments in Bertrand, 2008-2215 at p. 8, 6 So.3d at 743, and in Barbour, 2009-1258 at p. 16, 35 So.3d at 1151.