Judge Roland L. Belsome
RThe defendant, Octavia Gary, was convicted of second degree murder and obstruction of justice. For the reasons that follow, we affirm the convictions.

Facts

The defendant, Octavia Gary, and Anderson Soco dated and lived together off and on for five years. At the time of the incident, the couple resided at 8531 Green Street in New Orleans.
On April 7, 2013, a 911 dispatcher received a call from the defendant at 5:04 am. During that call, the defendant told the dispatcher that her boyfriend had been stabbed and that someone had “dropped him off from the club,” but she did not know the person or persons. When asked to identify the nightclub, the defendant responded that she did not know. The dispatcher asked how many times the victim had been stabbed, and the defendant can , then be heard asking the victim to show her; then, the defendant responded that the victim had been stabbed once. In the background of the recording, the defendant can be heard telling the victim to apply pressure to his wound, asking him where his pants were and if he wanted his clothes changed.- Then the defendant can be heard telling the victim that help was Ron the way and then telling hersélf, “I need to clean, I need to change, I need to get my purse...” The recording was terminated several seconds later.
Subsequently, the defendant was arrested for the murder of Mr. Soco. She was charged with second degree murder and obstruction of justice. After trial and deliberations, the jury . returned • verdicts of guilty on' both counts. Thereafter, the defendant filed a motion for a new trial and a motion for post-verdict judgment of acquittal, both of which were denied by the trial court. The trial court imposed the mandatory sentence of life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on the count of second degree, murder,, and 20 years imprisonment at hard labor on the count of obstruction of justice, to run concurrently. This appeal followed.

*119
Assignments of Error

On appeal the defendant challenges the sufficiency of the evidence to sustain her conviction of second degree murder, and she also maintains that the trial court erroneously allowed questioning on inadmissible evidence.

Sufficiency of the Evidence

The defendant was convicted of violating La. R.S. 14:30.1, second degree murder. The statute provides that second degree murder applies to the killing of a human being by an offender who “has a specific intent to kill or to inflict great bodily harm."[1] Specific intent is the state of mind which exists when circumstances indicate the offender actively desires prescribed criminal consequences to follow his act.[2] Specific intent need not be proven as fact, but may be inferred from the | ¡¡circumstances of the transaction and the actions of defendant.[3] The use of a deadly weapon in lethal circumstances will support a finding of specific intent.[4]
The United States Supreme Court set out the standard of review for a sufficiency of the evidence claim on appeal in Jackson v. Virginia.[5] In Jackson, the Court stated:
.. .the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt... .This familiar standard gives full play to the responsibility of-.the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[6]
“Under the Jackson standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court.”[7] Further, “a factfin-der’s credibility determination is entitled to great weight and should not be disturbed unless it is contrary to the evidence.”[8] In cases that are proven on circumstantial evidence, like this one, the rule is: “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”[9] Further, the Louisiana Supreme Court, in State v. Davis, articulated that the possible alternative hypothesis has to be “sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia.”[10]
| ¿At the trial in this case, the State presented several witnesses to testify as to the defendant’s previous behavior toward the victim, the victim’s actions on the morning of the murder, the confrontation that erupted between the defendant and the victim, and the defendant’s actions after the stabbing. Other evidence presented by the State included, among other things, photographs from the couple’s residence, the 911 phone recording, and cellular *120 phone records from the defendant and the victim.
The first witness to testify was Officer Michelle Johnson, a member of the New Orleans Police Department’s Communications Division. She authenticated the call record and the recording for the 911 call placed on April 7, 2013 at 5:04 a.m. She also identified the call record from the victim’s cell phone number that reported a stabbing at 8531 Green Street in 2011.
Another witness, the victim’s brother, Wilbert Soco, testified that he was on the phone with the victim while the victim walked home from a bar the victim had been at on the morning of April 7, 2013. He stated that the call originated at approximately 3:00 a.m. and lasted 15 to 20 minutes. According to Wilbert, the brothers ended the call just before the victim arrived at home.
The woman that resided next door to the defendant and Mr. Soco, Lili Love, was interviewed by the detectives on the morning of April 7, 2013. She was called to testify regarding her observations on that morning. She stated that the defendant and Mr. Soco fought often, and the defendant was usually the aggressor.[11] Her statement further revealed that she observed the defendant out on the porch and Mr. Soco sitting on the steps. Ms. Love said she was able to observe the incident Ififrom her bedroom window and could hear screaming “clear as day.” She overheard the defendant screaming expletives at Mr. Soco and threatening to hurt him. She saw the defendant return inside the residence, then emerge back outside cursing at Mr. Soco again. Then, Ms. Love saw them both enter the residence and heard them “rumbling and tussling as though they were coming through the wall.” Later, she saw the victim come outside clutching his chest and sitting down on the front porch, steps. Ms. Love’s statement reflects that it was between 3:00 and 4:00 a.m. because she heard the defendant “call the time” when defendant said, “Bitch, it’s almost four f***ing o’clock in the morning and you know I don’t like being here by my f***ing self!” She further stated that she saw the police and ambulance arrive around 5:00 a.m. Although Ms. Love did not witness the defendant stab Mr. Soco, she did state that on two prior occasions she witnessed the defendant threaten him with a kitchen knife.[12]
The jury also heard the testimony of Dr. Erin O’Sullivan, the coroner that examined Mr. Soco’s body. She testified that the lower portion of Mr. Soco’s heart had been pierced by a sharp object. That caused his heart to start pumping blood into his chest cavity. She stated that it would have taken some amount of time for the chest cavity to completely fill with blood until the blood would exit the body, rendering it possible for someone to have been stabbed there but not realize the seriousness of the wound until later. She stated that it would have been possible for an individual who had sustained such a wound to continue walking around and to sit down, possibly even have a short conversation, but the individual would |6ultimately exsanguinate in a little over an hour. Dr. O’Sullivan also testified that with immediate medical care, the victim’s life might have been saved.
To further support the case against the defendant, the State introduced the cellular phone records of both the victim and defendant, which showed that the defen *121 dant made twenty phone calls to the victim’s cell phone between the hours of 12:12 a.m. and 2:51 a.m. on April 7, 2013. The victim’s cell phone records reveal that he called the defendant’s phone at 2:51a.m. and the call lasted just over three minutes. Five minutes later, the victim placed a call to his brother which lasted fifteen minutes, terminating at 3:14 a.m. That was the last call placed from the victim’s phone.
The defendant’s cell phone records revealed that she placed forty-seven phone calls to three unknown phone numbers between 3:13 a.m. and 3:58 a.m., most of which lasted fewer than fifteen seconds. No phone calls were made or received after 3:58 a.m. until defendant placed a call to 911 at approximately 5:04 a.m.
The evidence presented by the State contradicted the statements made by the defendant asserting that Mr. Soco was stabbed prior to arriving home and that she called 911 immediately. Through testimony and phone records, the State was able to establish that the 911 call at 5:04 a.m. was made approximately two hours after Mr. Soco got home. Additionally, Detective Vaught testified that, in his professional opinion, the stabbing occurred in the master bedroom based on the amount of blood spatter in the room. Also, Officer Harris testified that the blood in the master bedroom appeared old, dark, and dried into the carpet, indicating it had been there for a while before first responders arrived at the scene.
|7The evidence, taken as a whole, in the light most favorable to the prosecution, was sufficient for a rational juror to find beyond a reasonable doubt that the defendant was guilty of second degree murder.

Second Assignment of Error

The defendant’s second assignment of error states that the trial court erred in allowing the prosecutor to repeatedly question a law enforcement officer witness regarding the defendant’s statement, which the court had ruled inadmissible. However, the record does not reflect that any of the defendant’s statements were ruled inadmissible. Additionally, in briefing the assignment of error, the defendant only asserts that improper comments were made by the prosecutor during questioning of a witness, and those comments violated a previous ruling by the trial court. A review of the testimony in question does not indicate any improper statements were made or that the questioning was in violation of an evidentiary ruling. This assignment of error is without merit.

Conclusion

Accordingly, the defendant’s convictions and sentences are affirmed.
AFFIRMED

. La.R.S. 14:30.1.

. La. R.S.14:30.1, A(1).

. State v. Hickman, 15-0817, p.11 (La.App. 4 Cir. 5/16/16), 194 So.3d 1160, 1161.

. State v. Brown, 03-0897 (La. 4/12/05), 907 So.2d 1.

. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

. Id., 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.

. State v. Williams, 11-0414 p. 18 (La. App. 4 Cir. 2/29/12), 85 So.3d 759, 771.

. Id.

. La. R.S. 15:438.

. 92-1623 (La. 5/23/94), 637 So.2d 1012, 1020 (emphasis supplied).

. Testimony from Mr. Soco’s sister, Monyet-ta, and his son, Anderson, likewise described excessive fighting and the defendant as the aggressor.

. Mr. Soco’s son, Anderson, also testified to seeing the defendant threaten his dad with a knife on a previous occasion.